THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **BRUCE D. CARTER and** | * | **CIVIL ACTION NO. 05-1875** |
| **HILLARY T. CARTER** | | |
| | * | **JUDGE JAMES** |
| **Versus** | | |
| | * | **MAGISTRATE JUDGE HAYES** |
| **CNH AMERICA, LLC and** | | |
| **CASE CORPORATION** | | |

## MEMORANDUM RULING

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Remand[1] on the basis of improper joinder filed by Plaintiffs, Bruce D. Carter and Hillary T. Carter (Doc. No. 29). Defendant CNH America, LLC ("CNH") opposes Plaintiffs' motion. After review of the law and the evidence submitted by each side, for the reasons stated below, the undersigned finds that jurisdiction in this Court is proper. Plaintiffs' Motion to Remand is therefore **DENIED**.

## STATEMENT OF FACTS

Plaintiffs filed suit against CNH on October 20, 2005, in the Fourth Judicial District Court of Ouachita Parish, State of Louisiana, seeking to recover damages under the Louisiana Products Liability Act. The claims stem from an accident involving a cotton picker designed and

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

manufactured by CNH.[2] Trippet Faulk ("Faulk"), the operator of the cotton picker, stopped the cotton picker so that Plaintiff Bruce D. Carter could go underneath it and clean the electronic monitoring lenses in the interior of an air conveyor chute. Faulk got down from the machine, but left the engine running and went to check on another piece of equipment. When he returned about fifteen minutes later, he climbed back onto the cotton picker and engaged it without first checking to be sure that Bruce B. Carter was no longer underneath. As a result, Bruce D. Carter was crushed under the front wheels. The accident left Bruce D. Carter a paraplegic with additional injuries to his spleen, stomach, colon, and chest.

On October 28, 2005, CNH removed the matter to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and pursuant to 28 U.S.C. §§ 1441 and 1446. Plaintiffs then obtained leave to amend their original complaint and joined Scott Tractor Company, L.L.C., ("Scott") as an additional defendant. Thereafter, Plaintiffs filed this Motion to Remand arguing that the addition of Scott, a Louisiana entity, destroyed complete diversity of the parties, depriving the Court of subject matter jurisdiction. CNH opposes the Motion to Remand arguing that Plaintiffs fraudulently joined Scott in an attempt to defeat diversity jurisdiction.

## LAW AND ANALYSIS

The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Original federal

---

[2]Specifically, a MODEL 1844 J.I. Case Cotton Picker owned and operated by Trippet Faulk.

diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). This diversity of citizenship must be complete, meaning that the citizenship of every plaintiff must be diverse from the citizenship of every defendant. *See Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992)(citations omitted). For diversity purposes, a corporation is deemed to be a citizen of its state of incorporation and the state in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). After removal of a case, the plaintiff may move for remand, and "[if] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

CNH opposes the motion to remand, alleging that Plaintiffs fraudulently joined Scott. In *McDonal v. Abbott Laboratories*, 408 F.3d 177, 180 (5th Cir. 2005), the Fifth Circuit adopted the term "improper joinder," rather than "fraudulent joinder," and stated that while there is no substantive difference between the two terms, the phraseology "improper joinder" is preferred.

In the instant case, neither party alleges any allegations of fraud in the parties' pleading of jurisdictional facts. Both parties concede that Plaintiffs and Scott possess Louisiana citizenship for purposes of determining subject matter jurisdiction. Therefore, in order to defeat Plaintiffs' motion to remand, CNH must show that Plaintiffs cannot establish a cause of action against Scott as a matter of Louisiana state law. CNH must demonstrate that "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is *no reasonable basis* for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573 (5th Cir.

3

2004)(en banc), *cert denied*, 544 U.S. 992 (2005)(emphasis added).

In determining the validity of an improper joinder claim, "the district court 'must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.'" *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir.1995)(quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). The court must also resolve all ambiguities in the controlling state law in the plaintiff's favor. *Id*. The court need not decide whether the plaintiff will actually, or even probably, prevail on the merits; it must only determine whether there is a reasonable possibility that the plaintiff may do so. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992)(citations omitted).

When deciding whether a plaintiff could possibly recover against an in-state defendant, a district court may conduct a narrow or broad inquiry. *See Smallwood*, 385 F.3d at 573. The narrow inquiry resembles "a 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," while the broad inquiry is more akin to a summary judgment in which the court may "pierce the pleadings" and look to depositions, affidavits, and other evidence. *See id.* Which inquiry to utilize is wholly within a district court's discretion; however, the United States Court of Appeals for the Fifth Circuit cautioned courts about unnecessarily performing a summary inquiry:

> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We

emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Id.* at 573-74.

Through the Motion to Remand, Plaintiffs contend that Scott was a properly joined defendant. In the amended complaint, Plaintiffs raise a claim of negligence against Scott under Article 2315 of the Louisiana Civil Code and the Louisiana Products Liability Act. A review of Plaintiffs' petition reveals that their sole theory of recovery against Scott rests on an alleged directive made by Scott during the retrofit of the Model 1844 cotton picker.[3] Plaintiffs allege that Scott directed Faulk to refrain from shutting down or otherwise stopping the engine during use, and that this directive contributed to the injuries suffered by Bruce D. Carter.

In their Opposition to the Motion to Remand, CNH provides deposition testimony in which Faulk states that his usual practice always was to leave the cotton picker running while cleaning the lenses or whenever he got off of the cotton picker for brief periods of time. (Doc. #33-1, p.7). CNH argues that, in light of Faulk's testimony, Plaintiff has no evidence to support the element of causation in the negligence claim against Scott.[4] CNH argues that without some

---

[3]The installed retrofit did not directly involve the electronic monitoring lenses which caused the alarm to sound. Instead, the retrofit was designed to prevent derailment of belt drive equipment driving a fan which blew the cotton into the rear container.

[4]Under Louisiana law, the elements for a negligence claim are fault, causation, and damages. *Gauthe v. Asbestos Corp., Ltd.*, 703 So.2d 763, 766 (La.Ct.App.1997) (citing *Owens v.*

5

showing that Faulk changed his behavior as a result of Scott's directive to leave the engine running, Plaintiffs cannot prove a causal link between the accident and the alleged directive, and therefore have no possibility of recovery in state court.

In their reply brief, Plaintiffs failed to address causation at all as it applied to Scott. (Doc. #36). The Court then ordered Plaintiffs to submit a brief presenting any facts they had to support the element of causation in their claim against Scott. (Doc. #39). In response to the Court's order, Plaintiffs failed to provide any affidavit or other evidence affirmatively showing that Faulk altered his usual routine as a result of any statement made by Scott. Instead, Plaintiffs rely on the fact that Faulk received the alleged directive before the accident occurred and argue that CNH did not pinpoint exactly when Faulk began following his "usual practice." Instead of providing any evidence to support a claim that Faulk changed his usual practice as a result of Scott's actions, Plaintiffs simply argue that CNH is merely speculating when it alleges that Faulk's practice was to leave the motor running prior to any directive from Scott.

The Court finds that a reasonable person giving a plain reading of the deposition would find Faulk's usual practice, both before and after the alleged directive from Scott, was to leave the motor running whenever he stopped the machine for short periods, including while cleaning the lenses. Throughout his deposition testimony, Faulk repeatedly stated that his usual practice was to leave the motor running during the work day, unless he was leaving the cotton picker for a lengthy period of time. Faulk had ample opportunity to explain that leaving the motor running had not always been his usual practice and that the practice began only after he received Scott's alleged directive, yet he said no such thing. In addition, if Faulk's usual practice had been to turn

---

*Martin*, 449 So.2d 448, 450 (La.1984)).

the engine off each time he got off of the cotton picker until Scott directed him to do otherwise, the plaintiffs could have provided an affidavit from him so stating. The fact that they did not do so, even after the undersigned ordered them to submit any evidence they had on the causation issue, speaks volumes. Since there is no evidence that Faulk's usual practice was ever to turn the engine off each time he got off of the cotton picker, or that he altered his usual practice due to Scott's alleged directive, there is simply no evidence to support a claim that the alleged directive caused the tragic accident out of which this suit arises.

The Fifth Circuit has held that district courts should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support claims against a non-diverse defendant. *Badon* v. *R J R Nabisco Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (citation omitted). In *Badon*, the court considered affidavits submitted by defendants and found no "reasonable basis for predicting that plaintiffs might establish liability" after the plaintiffs failed to contradict evidence provided in the affidavits. *Badon*, 224 F.3d at 393. In the absence of proof to the contrary, the Court finds that the assertions in Faulk's deposition must be taken as true. See *Badon*, 224 F.3d at 394 (holding that a plaintiff can defeat a defendant's fraudulent joinder argument "only when there exists an actual controversy, i.e. when both parties have submitted evidence of contradictory facts."). Since Plaintiffs do not submit evidence to contradict the plain reading of Faulk's deposition testimony, the Court must take his statements as fact.

Without causation, the Court can find no reasonable basis for predicting that Plaintiffs would recover against Scott under La. C.C. Art. 2315. Defendants have carried their burden of proving that Scott has been improperly joined in this action.

**Therefore, for the reasons stated above, the Motion to Remand is DENIED.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 2nd day of August 2006.

                                                                    KAREN L. HAYES
                                                                    U. S. MAGISTRATE JUDGE